## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
_____

Mark Brown, on behalf of himself
and a class of persons similarly
situated,

        Plaintiff,

                                    Civ. No. 08-4904 (RHK/AJB)
                                    **MEMORANDUM OPINION**
                                    **AND ORDER**

v.

Medtronic, Inc., *et al.*,

        Defendants,
_____

Edwin J. Mills, Stull Stull & Brody, New York, New York, David E. Krause, Krause & Hovland, Chartered., Minneapolis, Minnesota, for Plaintiff.

Jeffrey B. Rudman, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts, Patrick S. Williams, Briggs and Morgan, PA, Minneapolis, Minnesota, for Defendants.
_____

## INTRODUCTION

Plaintiff Mark Brown, a former employee of Medtronic, Incorporated ("Medtronic"), alleges that the company, along with certain committees, boards, executives, and committee members (hereinafter referred to jointly as the "Defendants"), breached fiduciary duties owed to him and other similarly situated individuals, causing their company-sponsored retirement plans to lose value. The Defendants now move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Finding that the Plaintiff lacks standing to pursue his claims, the Court will grant the Motion.

**BACKGROUND**

Medtronic is a medical technology business incorporated in Minnesota. (Compl. ¶ 6.) At all times relevant to this action, Defendant Carol A. McCormick was Medtronic's Senior Vice President of Human Resources. (Id. ¶ 8.) All other individual Defendants were members of Medtronic's Board of Directors, Compensation Committee, or Qualified Plan Committee. (Id. ¶¶ 7-19.)[1]

The allegations contained in the Second Amended Complaint (the "Complaint") concern the Sprint Fidelis lead and Infuse Bone Graft, two Medtronic products. (Id. ¶¶ 55-89.) The Sprint Fidelis lead (the "Fidelis lead") is a complex wire that connects implantable cardioverter defibrillators ("ICDs") to a patient's heart muscle. (Id. ¶ 56.) ICDs are small devices implanted in patients' chests to monitor heart rates and correct heart rhythm disorders. (Id. ¶¶ 55-57.) If a Fidelis lead detects that the patient's heart is out of rhythm, the ICD sends an electric shock through the Fidelis lead to correct the irregularity. (Id. ¶ 57.)

Problems with the Fidelis lead began to surface following its introduction to the market. An investigation conducted by a physician at the Minneapolis Heart Institute, Dr. Robert G. Hauser, concluded that the Fidelis lead was failing at a significantly higher rate than expected. (Id. ¶¶ 63-67.) The results of this study were communicated to Medtronic in February 2007. (Id. ¶¶ 63, 67) On October 15, 2007, Medtronic voluntarily

---

[1] These individual Defendants are William A. Hawkins, Gary Ellis, Terry Carlson, Warren Watson, Dave Ness, Gary Lubben, Katie Szyman, Richard H. Anderson, Victor J. Dzau, James T. Lenehan, Kendall J. Powell, Jack W. Schuler, David L. Calhoun, Arthur D. Collins, Jr., Shirley Ann Jackson, Denise M. O'Leary, Robert C. Pozen, and Jean-Pierre Rosso. (Compl. ¶¶ 5-19.)

recalled the Fidelis lead. (Id. ¶ 71.) After the announcement of the recall, Medtronic stock fell $6.33 per share, an 11.2% decline. (Id. ¶ 73.)

Infuse Bone Graft ("Infuse") is a "bone filling material which contains a bone protein." (Id. ¶ 78.) Infuse is implanted where bone growth is needed, attracting "bone-building cells to the site." (Id.) As an FDA-approved medical product, Infuse is labeled with a description indicating its approved uses. (Id. ¶ 82.) While a manufacturer may not promote the use of its products other than those uses described on the label, physicians may use products in ways not listed on the label ("off-label uses"). (Id.) Plaintiff asserts that Medtronic was illegally promoting Infuse by paying physicians to endorse and teach off-label uses. (Id. ¶¶ 82-88.)

Plaintiff was employed at Medtronic from 1974 until 2008. (Id. ¶ 5.) During that time, he participated in the Medtronic, Inc. Savings and Investment Plan (the "Plan"). (Id. ¶ 1.) The Plan has three components, one being an Employee Stock Ownership Plan ("ESOP") that invests in Medtronic common stock. (Id. ¶ 36.) Plaintiff owned approximately 1,997.055 shares of Medtronic common stock prior to the commencement of the Class Period.[2] (John J. Butts Decl. Ex. H.) During the Class Period, Plaintiff acquired an additional 323.981 shares. (Id.) However, between May 28, 2008, and June 26, 2008, Plaintiff sold all of his Medtronic common stock and thereafter retained no assets in the Plan. (Id.)

Plaintiff brings his claims under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), for "plan-wide relief on behalf of

---

[2] The Class Period in this action is February 15, 2007, to December 12, 2008. (Compl. ¶ 1.)

a class consisting of all current and former Participants in the Plan" who held shares of Medtronic common stock during the Class Period. (Compl. ¶ 1.) Plaintiff asserts that Defendants have breached their fiduciary duties through the imprudent investment in Medtronic common stock (Claim I), material misrepresentations and omissions (Claim II), divided loyalties (Claim III), and the mismanagement of Plan assets (Claim IV). (Id. ¶¶ 93-121.) Plaintiff further asserts that the Defendants on Medtronic's Board of Directors also breached their fiduciary duties by failing to properly appoint, monitor, and inform the Qualified Plan Committee (Claim V). (Id. ¶¶ 122-27.)

## STANDARD OF REVIEW

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a defendant may challenge the plaintiff's complaint either on its face or on the truthfulness of its proffered facts. See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual challenge to jurisdiction, the court may consider matters outside the pleadings. See Titus, 4 F.3d at 593; Osborn, 918 F.2d at 729 n.6. Furthermore, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)). The plaintiff has the burden of proving that jurisdiction exists. Id.

**ANALYSIS**

Article III of the United States Constitution confines the federal courts to adjudicating actual "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1.  While a variety of doctrines have evolved under the case-or-controversy requirement, none is more important than the requirement that the plaintiff have standing.  See Allen v. Wright, 468 U.S. 737, 750 (1984).[3]  The standing requirement "is to be determined as of the time the complaint is filed."  Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001); see also Nolles v. State Comm. for Reorganization of Sch. Dists., 524 F.3d 892, 901 (8th Cir. 2008).  Therefore, it is appropriate for the Court to address this issue at the pleading stage.

"To show Article III standing, a plaintiff has the burden of proving:  (1) that he or she suffered an injury-in-fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision."  Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008) (internal quotation marks and citation omitted).  In this case, Defendants assert that Plaintiff has not suffered an injury-in-fact and thus has no standing.  The Court agrees.

An injury-in-fact must be more than a "generalized grievance."  United States v. Hays, 515 U.S. 737, 743 (1995).  Indeed, the injury must be "concrete" and "actual," not

---

[3] Constitutional standing must be distinguished from statutory standing.  The former refers to "whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue" under Article III of the United States Constitution.  United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003).  The latter concerns whether the person whose standing is challenged is a proper plaintiff under the terms of the statute in question.  Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1211 (10th Cir. 2006).  Here, Defendants do not challenge Plaintiff's statutory standing.

"conjectural or hypothetical." Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Under ERISA, a fiduciary who breaches "any duty is liable to the plan (i) for any losses to the plan resulting from each such breach, (ii) for any profits made through use of assets of the plan by the fiduciary, and (iii) for such other equitable or remedial relief as the court may deem appropriate." Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992) (quoting 29 U.S.C. § 1109(a)) (internal quotation marks and alteration omitted). The basic remedy under ERISA for breach of fiduciary duty is to "restore plan participants to the position in which they would have occupied but for the breach of trust." Id. (internal quotation marks, citation, and alteration omitted).

Plaintiff claims that Medtronic stock was an imprudent investment during the Class Period because the market and Plan participants were unaware that the Fidelis lead was soon to be removed from the market and that Medtronic was illegally marketing Infuse. (Compl. ¶¶ 55-89.) Therefore, Plaintiff argues that Medtronic stock was artificially inflated during this time period. Accordingly, Plaintiff must establish that he was actually injured by the artificial inflation in order to have standing in this action.

Defendants argue that Plaintiff did not suffer an actual injury from the artificial inflation because he was a "net seller." (Def. Mem. at 11-13.) Plaintiff held 1,997.055 shares of Medtronic common stock prior to the Class Period and sold all of these shares during the period of inflation. Therefore, Plaintiff *benefited* from the artificial inflation because he sold his shares at prices he claims were *higher* than they should have been. Stated simply, Plaintiff made more money *because of* Defendants alleged wrongful conduct. Although Plaintiff did acquire approximately 324 additional Medtronic shares

during the period of inflation, these shares were also sold at allegedly inflated prices.[4] Moreover, any loss that Plaintiff may have incurred as a result of the acquisition of these 324 shares is more than made up for by the artificially high return on the shares he purchased prior to the Class Period and sold at an inflated price.[5]

This precise standing issue was recently addressed by the District of Massachusetts. In re Boston Scientific Corp. ERISA Litig., 254 F.R.D. 24 (D. Mass. 2008). In Boston Scientific, the named Plaintiffs brought an ERISA action for breach of fiduciary duty, asserting that plan fiduciaries imprudently selected "company stock as an investment, despite knowledge that the stock price was artificially inflated." Id. at 26. The court held that the named plaintiffs lacked standing to pursue their claims because they had sold more stock during the Class Period than they had purchased, and therefore, "actually gained more money on their company stock Plan investments than they would have made had Defendants' breach never occurred." Id. at 29. Like the Plaintiff in this case, the Boston Scientific plaintiffs purchased company stock while it was artificially

---

[4] In a securities case, the Supreme Court noted that if "the purchaser sells [his] shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005). Simply purchasing stocks at an inflated price, in an of itself, is not sufficient to show causation and loss. Id. at 342-44; see also In re Boston Scientific Corp. ERISA Litig., 254 F.R.D. 24, 30 (D. Mass. 2008) (noting that "the purchase of artificially inflated stock does not perforce result in an injury at the time of purchase" because "[a]s long as the undisclosed information remains nonpublic, the fiduciary's failure to disclose cannot harm the participant's investment.").

[5] At oral argument, Plaintiff argued that he has actual injury because the approximately 2,000 Medtronic shares he purchased prior to the Class Period were worth more prior to the Class Period than they were when sold during the Class Period. Therefore, Plaintiff asserts he has established injury-in-fact. However, Plaintiff does not assert that these 2,000 pre-Class Period shares were purchased at an inflated price, but does assert that they were sold at an inflated price. Therefore, Plaintiff did not suffer any loss *because of* the breach of fiduciary duty, and in fact, was able to sell the stock at a higher price than he otherwise would have but for the breach.

7

inflated, but also sold this stock during the inflation period. Id. at 29-31. The court determined that "any loss by those shares was more than made up for by the artificially high return on [the] investment in units purchased before the Class Period began." Id. at 31.[6]

Plaintiff asserts that he suffered injury-in-fact in this case because he lost the opportunity for even greater returns on his investments. Specifically, he argues that the measure of his damages should be "the difference between what the imprudent investment -- here, Medtronic stock -- earned, and what an appropriate alternative investment would have earned." (Mem. in Opp'n at 11-12.) However, the case that Plaintiff relies upon to establish his right to recover lost-profit opportunities notes that this measure of damages is not available in cases concerning stock-price manipulation. Donovan v. Bierwirth, 754 F.2d 1049, 1055 (2d Cir. 1985.) In Donovan, the Second Circuit stated that in stock-price manipulation cases, "it is appropriate to hold such defendants liable for the difference between what the plaintiffs paid or received in payment and what the stock was in fact worth." Id. This measure of damages for stock-price manipulation claims has been adopted by the Eighth Circuit in Martin, which held that "[a]n appropriate measure of damages for manipulating the price of securities is the

---

[6] Other courts have held plaintiffs to be without standing when faced with similar facts. See Harley v. Minn. Mining & Mfg. Co., 284 F.3d 901, 906-08 (8th Cir. 2002) (holding that an ERISA plaintiff lacked standing because despite breach of fiduciary duty, the Plan portfolio had a surplus and therefore did not cause plaintiff actual injury); Piazza v. EBSCO Indus., Inc., 273 F.3d 1341, 1354 (11th Cir. 2001) (holding that an ERISA plaintiff lacked standing when the alleged breach of fiduciary duty "if anything, increased his retirement distributions"); Vermeylen v. ProQuest Co., No. 06-12327, 2007 WL 1218713, at *5 (E.D. Mich. Apr. 23, 2007) (holding an ERISA plaintiff lacked standing when she sold her stock at a time she claimed it was artificially inflated).

difference between what was paid for the stock, and what would have been paid had the market price not been manipulated." 965 F.2d at 671 (quoting Donovan, 754 F.2d at 1055) (internal quotation marks and alteration omitted).[7]  Under this measure of damages, Plaintiff has suffered no injury.

At oral argument, Plaintiff attempted to separate his breach of fiduciary duty claims into two categories: breaches related to the Fidelis lead and breaches related to Infuse.  Plaintiff claims that he has suffered injury-in-fact if the Court looks at the Fidelis lead claims and Fidelis lead timeline in isolation, and therefore, has standing for all claims.  The Court does not agree.  The Complaint alleges five claims of breach of fiduciary duty, and all five claims involve both the Fidelis lead and Infuse.  Plaintiff lacks standing to assert these claims because if the claims as asserted are true, he has suffered no injury.  The Court will not re-write the Complaint or ignore Plaintiff's Infuse allegations in order to provide him with standing.

In sum, the Plaintiff has not met his burden in establishing his injury-in-fact, and therefore, he does not have standing in this case.  A class representative must have individual standing against a defendant before he may represent a class against that defendant.  Hall v. Lhaco, Inc., 140 F.3d 1190, 1196-97 (8th Cir. 1998) (when a plaintiff "does not have standing to pursue his claim . . . it is immaterial whether any member of the potential class would have standing to pursue [the] claim.  [The plaintiff] is not a

---

[7] Additionally, this identical argument for damages in the form of lost profit opportunities was considered and rejected in Boston Scientific. 254 F.R.D. at 30-31.  In that case, the court held that the plaintiffs could "only recover if they [could] show that the value of the investments would have been greater had the fiduciary fulfilled its duty." Id. at 31 (citation omitted).

proper representative of the class where he himself lacks standing to pursue the claim.").
Therefore, the Complaint must be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 23) is **GRANTED** and Plaintiff's Second Amended Complaint (Doc. No. 13) is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: May 26, 2009
s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge